**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE (A.L.H.),<br><br>　　　　Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS & RESORTS, INC. *et al.*,<br><br>　　　　Defendants. | Civil Action No: 25-00579 (SDW) (JRA)<br><br>**OPINION**<br><br>December 22, 2025 |

**WIGENTON**, District Judge.

Before this Court is Defendants Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, LQ Management L.L.C., La Quinta Franchising LLC, La Quinta Holdings Inc., ("Wyndham Defendants") and CPLG Properties, LLC's, formerly known as BRE/LQ FL Properties, L.L.C., ("Franchisee Defendant") (collectively, "Defendants") Motion to Dismiss (D.E. 21) Plaintiff Jane Doe (A.L.H.)'s Amended Complaint (D.E. 17 ("Am. Compl.")). Jurisdiction is proper pursuant to 28 U.S.C. § 1331[1]. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the motion to dismiss is **DENIED**.

**I.　FACTUAL BACKGROUND**

---

[1] To the extent that jurisdiction is improper, Defendants did not raise a lack of personal jurisdiction defense under Rule 12(b)(2) in its Motion, thereby waiving the issue. Fed. R. Civ. P. 12(h). "A party who fails to raise personal jurisdiction as a defense in a Rule 12 motion waives the defense and cannot raise it in an answer or in a subsequent motion." *Hull v. Glob. Digital Sols., Inc.*, No. 16-5153, 2018 WL 4380999, at *11 (D.N.J. Sept. 14, 2018) (citing *Myers v. American Dental Ass'n*, 695 F.2d 716, 720 (3d. Cir. 1982)).

Plaintiff alleges that from January 15, 2015 to January 16, 2015, she was trafficked at the La Quinta Hotel located at 7401 NW 36 Street, Miami, FL 33166 (the "Subject La Quinta"). (Compl. ¶¶ 21, 26.) She states that there were ample and obvious "red flags" which did or should have put Defendants on notice of what was taking place. (*Id.* at ¶¶ 34–40.) These include, but are not limited to: "the hotel room was paid for with a visa prepaid card; [Plaintiff] would not leave the room; she had few or no personal items; the do not disturb sign was on the door for the duration of the time she was in the room; housekeeping was not allowed to enter her room even though fresh towels and sheets were constantly requested; approximately fourteen (14) different men who were not hotel guests visited her room in one day and would stay no longer than 20-30 minutes in her room at a time; and her trafficker dragged her by the arm by the pool area and through the front lobby all the while she was crying and screaming for help." (*Id.* at ¶ 35.) Plaintiff also refers to several online reviews of the Subject La Quinta from around the timeframe of the alleged sex trafficking which establishes the Subject La Quinta's role as a "venue for criminal activity, including sex trafficking." (*Id.* at ¶ 71.)

Plaintiff further alleges that Wyndham Defendants "knew or should have known about the pervasive sex trafficking at the Subject La Quinta based on obvious indicators of this activity." (*Id.* at ¶ 72.) In addition to alleging obvious signs of sex trafficking, Plaintiff alleges that Wyndham Defendants and Franchisee Defendant knew of these signs because of their "policy or protocol that required hotel staff to report suspected criminal activity, including sex trafficking." (*Id.* at ¶ 82.) Despite being franchisors, Plaintiff also maintains that Wyndham Defendants allegedly directly operated the hotels, including by "controll[ing] all details of the guest reservation, check-in, and payment processes," controlling "a brand-wide 'do not rent' system," and "restrict[ing] the ability of franchisee [sic] and staff to refuse or cancel a reservation," among

2

other involvement. (*Id.* at ¶ 93.) Accordingly, Plaintiff alleges Wyndham Defendants and Franchisee Defendant "knew or were willfully blind to the fact that [Plaintiff] was being trafficked." (*Id.* at ¶¶ 86, 90.)

On January 16, 2025, Plaintiff filed a Complaint (D.E. 1) and then subsequently filed her Amended Complaint on April 21, 2025. (D.E. 17.) The Amended Complaint contains two causes of action, all asserting violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591, 1595. Count I alleges that all Defendants are liable as beneficiaries and Count II asserts that Wyndham, Defendants are vicariously liable for the acts of their franchisees and those franchisees' subagents. (*Id.* at ¶¶ 119–129.) Defendants then moved to dismiss the Amended Complaint on May 12, 2025. (D.E. 21.) All briefing was timely completed.

## II. LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichik*, 605 F.3d 223, 229 (3d Cir. 2010). Determining whether a complaint's allegations are

"plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

As a preliminary matter, this Court notes that this case involves many of the same parties, counsel, and legal arguments as prior cases recently decided by this Court. *See Doe (J.T.A.) v. Wyndham Hotels & Resorts, Inc.*, No. 25-00687, 2025 WL 2731105 (D.N.J. Sept. 25, 2025); *Doe (K.R.D.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-8174, 2025 WL 1166519 (D.N.J. Apr. 21, 2025); and *Doe M.J.J. v. Wyndham Hotels & Resorts, Inc.*, No. 24-6490, 2025 WL 342092 (D.N.J. Jan. 30, 2025). The legal issues raised in the present motion to dismiss are materially similar, and this Court's analysis herein largely tracks its reasoning in those earlier opinions.

The TVPRA criminalizes, in relevant part,

> Knowingly . . . recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], . . . maintain[ing], patroniz[ing], or solicit[ing] . . . a person; or . . . benefit[ting] . . . from participation in a venture which has engaged in [any of those acts] knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act.

18 U.S.C. § 1591(a). It also permits victims of such acts to seek civil remedies against "perpetrator[s]" or anyone who "knowingly benefits or attempts or conspires to benefit … from participation in a venture which that person knew or should have known has engaged in" the acts described in § 1591. 18 U.S.C. § 1595(a). Here, Plaintiff has adequately pled that she was a victim of sex trafficking. (Am. Compl. ¶ 30 ("[Plaintiff] was trafficked through force, fraud and coercion

4

by her trafficker and was required to engage in numerous commercial sex acts for his financial benefit."); *see Jane Doe (C.J.) v. Albert Cotugno, Jr.*, No. 23-2973, 2024 WL 4500994, at *3 n.6 (D.N.J. May 16, 2024).)  As explained below, she has also adequately pled Defendants' direct liability under the TVPRA and Wyndham Defendants vicarious liability under the TVPRA.

### A. Beneficiary Liability

To state a claim for beneficiary liability under the TVPRA, Plaintiff must plead that Defendants "(1) 'knowingly benefit[ted] financially or by receiving anything of value, (2) from participation in a venture, (3) that [D]efendant[s] knew or should have known has engaged in sex trafficking under section 1591.'" *Cotugno*, 2024 WL 4500994, at *3 (first alteration in original) (quoting *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).  As to the first element, Plaintiff states that Defendants profited from every room rented to a trafficker and "knowingly received a financial benefit from participating in a venture in the form of a continuous business relationship and implicit understanding with the population of sex traffickers operating out of the Subject La Quinta, including [Plaintiff's] trafficker.  (Am. Compl. ¶¶ 98–100.) "[R]eceiv[ing] a share of the profits from room rentals" is sufficient to establish a knowing benefit under the TVPRA. *Cotugno*, 2024 WL 4500994, at *3 (citing *A.W. v. Red Roof Inns., Inc.*, No. 21-4934, 2022 WL 17741050, at *6 (S.D. Ohio Dec. 16, 2022); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 936 (D. Or. 2020)).  Therefore, Plaintiff has met this element for the purposes of beneficiary liability under the TVPRA.

Next, Plaintiff sufficiently pleads actions constituting participation in a venture.  "[A] legal business entity — such as a hotel or a franchise relationship — can constitute a 'venture' for purposes of the statute when sex trafficking occurs within its operations and the defendant knowingly benefits from its continued existence." *Doe (K.R.D.) v. Wyndham Hotels & Resorts,*

*Inc.*, No. 24-8174, 2025 WL 1166519, at *3 (D.N.J. Apr. 21, 2025) (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)).  Here, Plaintiff alleges that Defendants engaged in two ventures—one with the traffickers (Am. Compl. ¶¶ 100–108), and one together (*id.* at ¶¶ 109–113).  As to the venture with the traffickers, Plaintiff states that Defendants participated in the venture by acting jointly to rent rooms to traffickers and operating the hotel in a way that "attracted business from traffickers and facilitated their trafficking activity." (Am. Compl. ¶ 104).  Specifically, she pleads that Defendants:

> allowed traffickers to take steps that would minimize their traceability to law enforcement, such as accepting cash payments and not requiring identification from appropriate parties . . . provided additional services to traffickers (including [Plaintiff's] trafficker), including but not limited to, internet access, excessive towels, and extra housekeeping services to clean the activities of the trafficking venture once the traffickers vacated the rooms; [and] these traffickers reduced their operating burden because they did not need to make significant efforts to conceal their activities from the staff at the [hotel] but, instead, freely made requests that would facilitate their trafficking activities without concern for detection or interference by the staff.

(*Id.* at ¶ 106).  These allegations — accepted as true at this stage — are sufficient to demonstrate participation in a venture.

Next, Plaintiff's allegations as to the venture between Wyndham Defendants and the Franchisee Defendant are also sufficient to withstand dismissal.  As asserted by Plaintiff, Defendants shared a goal of maximizing revenue, such as gross room revenue, and did so by facilitating widespread sex trafficking at the Subject La Quinta.  (Am. Compl. ¶¶ 110-13.) Specifically, Plaintiff states that Wyndham Defendants "provided Franchisee Defendants with operational support, use of trademarks, marketing services, and other resources to operate the Subject La Quinta in a way that they knew or should have known was engaging in violations of 18 U.S.C. § 1595(a)."  (Am. Compl. ¶ 113.)  This business arrangement is sufficient to be

6

considered a venture under the TVPRA. *See Doe (M.J.J.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-6490, 2025 WL 342092, at *4 (D.N.J. Jan. 30, 2025) (citing *D.K. v. Red Roof Inns, Inc.*, No 22-3786, 2024 WL 1332195, at *5 (S.D. Ohio Mar. 28, 2024), *amended on other grounds sub nom*; *In re Hotel TVPRA Litig.*, No. 21-4933, 2024 WL 4945135 (S.D. Ohio Dec. 3, 2024) (deciding that the franchisor defendant which "profited, failed to implement policies, and maintained expansive control over the hotel operation standards" participated in a venture with franchisees).

As to the third element, Plaintiff's allegations are also sufficiently pled at this stage to establish that Defendants had actual or constructive knowledge that the ventures engaged in her sex trafficking. Plaintiff asserts that Defendants knew of the signs of sex trafficking and its pervasiveness in the hotel industry, especially at Wyndham-branded properties and the Subject La Quinta, and that based on that knowledge, they should have known of sex trafficking occurring as to her. (Am. Compl. ¶¶ 41–76.) Additionally, Plaintiff pleads that multiple employees at the Subject La Quinta observed several obvious "red flags" of sex trafficking, and Defendants knew or should have known of about her trafficking because of their policies that required hotel staff to report suspected sex trafficking at the Subject La Quinta. (*Id*. at ¶¶ 79–82.); *see Cotugno*, 2024 WL 4500994, at *4–5 (finding, at motion to dismiss stage, that allegations of cash payments, male visitors at unusual hours, and other signs were sufficient to establish actual or constructive knowledge as to sex trafficking); *see also E.B. v. Howard Johnson by Wyndham Newark Airport*, No. 21-2901, 2023 WL 12053001, at *5–10 (D.N.J. Dec. 29, 2023). At this stage, interpreting the complaint most favorably to Plaintiff, these allegations are sufficient to establish that Defendants should at least have known that the ventures may have been engaged in sex trafficking as to Plaintiff.

Moving Defendants dispute Plaintiff's allegations and argue that she fails to plausibly allege participation in a TVPRA venture. (Mov. Br. at 4.) Specifically, Defendants assert that Plaintiff's one-day stay is not sufficient to establish participation in a venture, citing to *Doe v. Wyndham Hotels & Resorts*, No. 23-01676, 2024 WL 3088722 (E.D. Cal. June 20, 2024) and *L.H. v. Red Roof, Inc.*, No. 22-00625, WL 5725574 (W.D. Ky. Sept. 5, 2023). Although both cases concern allegations of a one-day stay, Defendant reliance on such cases is unpersuasive. The cases are distinguishable in several key respects, particularly regarding the factual allegations. For instance, in *Doe*, the court emphasized that the plaintiff's factual allegations of the obvious signs of her own trafficking failed to demonstrate that the defendant had knowledge it was renting to people engaged in sex trafficking when it rented a room to her for her one-night stay. No. 23-01676, 2024 WL 3088722, at *5. Here, Plaintiff's factual allegations are distinguishable as she alleges that fourteen (14) men, whom were not-hotel guests, visited her room within a short time period while fresh towels and sheets were constantly requested. (Am. Compl. ¶ 35.) Additionally, she alleges that her trafficker dragged her through the front lobby while was crying and screaming for help. (*Id*.) Importantly, the cases cited by Defendants are out-of-circuit decisions, and while they may offer persuasive authority regarding the TVPRA, they are not binding on this Court in the Third Circuit. As such, the factual and legal framework of the *Doe* decision is not directly controlling here. Contrary to Defendants' assertions, Plaintiff alleges direct involvement in the rental of rooms and control over hotel operations related to the detection and response to sex trafficking, thereby supporting beneficiary liability at this stage in the litigation.

For the same reasons, Defendants' argument that Plaintiff failed to adequately plead "actual or constructive knowledge" also fails. Defendants argue that this case is distinguishable from this Court's decisions in *Doe (M.J.J.)* and *Doe (K.R.D.)*, where this Court found "obvious signs" of

trafficking sufficient to meet the "should have known" standard. (D.E. 21 ("Mov. Br.") at 12.) Namely, Defendants state that the "obvious signs" alleged in the Amended Complaint are implausible given the duration of Plaintiff's stay. (*Id.*) However, Defendants ignore Plaintiff's allegations of her trafficker dragging her through the lobby while she cried for help, and fourteen (14) men visiting her room within a short time period. When accepting Plaintiff's factual allegations as true, this Court finds that Plaintiff sufficiently pleads actual or constructive knowledge.

### B. Vicarious Liability

Courts have recognized that vicarious liability may be imposed under § 1595(a) based on common law agency principles. *See J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *8; *A.B. v. Hilton Worldwide Holdings*, 484 F. Supp. 3d at 939. "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994) (citing *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993)). In hotel TVPRA cases similar to the instant matter, "[t]he hallmark of an agency relationship is that the principal has the right to control the manner in which the agent performs his duties." *Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. 23-1493, 2023 WL 8890229, at *5 (D.N.J. Dec. 26, 2023).

Vicarious liability claims have survived motions to dismiss based on allegations that franchisors controlled "the mode and manner of the work ... [and] employee training," imposed "standardized and strict rules of operations, ... controlled pricing and reservations" and "regularly conducted inspections." *Id.*; *see A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 196 (E.D. Pa. 2020); *Cotugno*, 2024 WL 4500994, at *6 (holding allegations that franchisor "shared profits,

9

standardized employee training and rules of operations, controlled pricing and reservations, regularly conducted inspections, provided operational support, and had the right to terminate any franchisee ... that failed to comply with [franchisor's] requirements" sufficient to plead vicarious liability).

Here, Plaintiff has adequately pled a TVPRA violation by the Franchisee Defendants that can be imputed to Wyndham Defendants. Plaintiff alleges that Wyndham Defendants "subjected Franchisee Defendant to detailed standards and requirements regarding the operation of the Subject Ramada through the franchising agreement, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations." (Am. Compl. ¶ 115.) Plaintiff also alleges that Wyndham Defendants mandated "training programs" for franchised hotel staff, "dictat[ed] the content of that training," "established detailed job descriptions for all positions in its branded properties and drafted numerous, detailed policies that ... dictated which positions must perform which tasks and how they must do so," "controlled channels for guests to report complaints or provide feedback regarding the subject property," "conducted frequent and unscheduled inspections of the subject property," (*Id.* at ¶ 117) and retained the right to terminate franchising agreements "for failure to comply with policies that govern the means and methods used for day-to-day operations." (*Id.*) These allegations are sufficient to establish that the Franchisee Defendants were Wyndham Defendants' agents, and Wyndham Defendants may be considered vicariously liable for the Franchisee Defendant's actions.

At this stage, the Court must draw all reasonable inferences in Plaintiff's favor. The allegations here do support a plausible theory that the Franchisee Defendants violated the TVPRA,

10

and that Wyndham Defendants may be vicariously liable for those violations. Accordingly, the Motion to Dismiss is denied as to a vicarious liability theory.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **DENIED**. An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: José R. Almonte, U.S.M.J.
Parties